IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

UNITED STATES OF AMERICA

VS.                        Criminal Action No.: 5:25-cr-1-DCB-LGI

DERRICK LAKEITH COCKERHAM
a/k/a Bad Foot                                        DEFENDANT
g

<u>ORDER AND MEMORANDUM OPINION</u>

This matter comes before the Court on Defendant Derrick
Lakeith Cockerham's Motion to Dismiss Count One of the
Indictment pursuant to Federal Rule of Criminal Procedure 12.
[ECF No. 20]. Cockerham has been charged with possessing a
firearm in violation of 18 U.S.C. § 922(g)(1) (hereinafter "§
922(g)(1)"), and he now asserts both facial and as-applied
challenges to the statute's constitutionality under the Second
Amendment. <u>Id.</u> at 1. He further claims that § 922(g)(1) violates
both the Equal Protection and Due Process clauses of the Fifth
Amendment, that it is void for vagueness, and that its enactment
was an unconstitutional extension of Congress's powers under the
Commerce Clause. <u>Id.</u> The Court finds as follows:

I.   Background

Defendant is currently charged with one count of possession of
a firearm by a convicted felon (Count 1) and two counts of
possession with intent to distribute 50 grams or more of
methamphetamine and an amount of cocaine (Counts 2 and 3). [ECF

No. 22] at 2; [ECF No. 3]. Previously, on September 14, 2017, in the Circuit Court of Pike County, Mississippi, Cockerham was convicted of two felony counts of possessing with intent to distribute cocaine; he was sentenced to an eight-year term of imprisonment but ordered to serve only one year of that sentence, followed by supervised release. [ECF No. 22] at 2. The Court notes that Counts 2 and 3 of the current indictment cannot serve as a predicate felony for a § 922(g)(1) conviction because a charge in the same indictment cannot serve as a basis for disarming a felon; "that charge must instead rely on previous history." United States v. Diaz, 116 F.4th 458, 467 (5th Cir. 2024). Thus, the only relevant criminal charge for our purpose is Cockerham's 2017 conviction for possessing with intent to distribute cocaine.

II.  Legal Standard

Under Federal Rule of Criminal Procedure 12(b), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." In the Fifth Circuit, "[t]he propriety of a motion to dismiss an indictment ... by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." United States v. Fontenot, 662 F.3d 640, 644 (5th Cir. 2011) (citations omitted).

2

"If a question of law is involved, then consideration of the motion is generally proper." Id.

The Second Amendment guarantees that "the right of the people to keep and bear Arms[] shall not be infringed." U.S. CONST. amend. II. However, this right "is not unlimited." District of Columbia v. Heller, 554 U.S. 570, 626 (2008). In New York State Rifle & Pistol Ass'n., Inc. v. Bruen, the Supreme Court announced a new two-step framework for analyzing whether a regulation is consistent with the Second Amendment. 597 U.S. 1, 17 (2022). First, "the Second Amendment's plain text must cover the defendant's conduct." Id. at 24. Second, if a defendant's conduct is covered by the Second Amendment, the burden falls on the government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Id. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" Id. (quoting Koningsberg v. State Bar of Cal., 366 U.S. 36, 49 n.10 (1961)).

   III. Analysis

      A. Facial Challenge

   At the outset, the Court denies Cockerham's facial challenge to § 922(g)(1), as Fifth Circuit precedent forecloses this argument. United States v. Diaz, 116 F.4th 458, 472 (5th

3

Cir. 2024); <u>United States v. Zinnerman</u>, No. 24-30310, 2025 WL
984605 at *1 (5th Cir. Apr. 2, 2025); <u>United States v. Davis</u>,
No. 24-20258, 2025 WL 958265 at *1 (5th Cir. Mar. 31, 2025) (the
latter two cases held that <u>Diaz</u> foreclosed the Defendants'
facial challenges to § 922(g)(1)). "To sustain a facial
challenge, 'the challenger must establish that no set of
circumstances exists under which the statute would be
valid.'" <u>Diaz</u>, 116 F.4th at 471 (quoting <u>United States v.</u>
<u>Salerno</u>, 481 U.S. 739, 745 (1987)). In <u>Diaz</u>, the Fifth Circuit
upheld the validity of § 922(g)(1) when the predicate offense
was a felony conviction for theft. <u>See Id.</u> at 467-70. Because
the Fifth Circuit has upheld § 922(g)(1) in at least some cases,
Defendant's facial challenge fails.

B. As-applied Challenge

The Court now proceeds to address Cockerham's argument that §
922(g)(1) is unconstitutional as applied to him. As to the first
<u>Bruen</u> inquiry, there is no doubt that Defendant is a person
covered by the Second Amendment. Indeed, the Fifth Circuit has
held that "[t]he plain text of the Second Amendment covers the
conduct prohibited by § 922(g)(1)." <u>Id.</u> at 467. The Court
therefore turns to the second step of the <u>Bruen</u> analysis, and
the burden rests on the Government to demonstrate that
"regulating [Cockerham's] possession of a firearm is 'consistent

4

with the Nation's historical tradition' of disarming someone

with a criminal history analogous to his." United States v.

Schnur, 132 F.4th 863, 867 (5th Cir. 2025). In its Bruen

opinion, the Supreme Court explained that

> "analogical reasoning under the second amendment is
> neither a regulatory straightjacket nor a regulatory blank
> check. On the one hand, courts should not uphold every
> modern law that remotely resembles a historical analogue,
> because doing so risk[s] endorsing outliers that our
> ancestors would never have accepted. On the other hand,
> analogical reasoning requires only that the government
> identify a well-established and representative historical
> *analogue*, not a historical *twin*. So even if a modern-day
> regulation is not a dead ringer for historical precursors,
> it still may be analogous enough to pass constitutional
> muster.

New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1,

30, 142 S. Ct. 2111, 2133, 213 L. Ed. 2d 387 (2022).

The Government maintains that disarming Cockerham under §

922(g)(1) "does not punish [his] drug trafficking crimes 'to an

extent beyond what was done at the founding.'" [ECF No. 22] at 4

(quoting Diaz, 116 F.4th at 469) (citing United States v.

Rahimi, 114 S. Ct. 1889, 1898 (2024)). To support this

conclusion, the Government draws on the similarities between the

modern felony of drug trafficking and the founding-era crimes of

trafficking in contraband and counterfeiting/forgery. Id. at 6.

"Through the end of the 1700s, many American jurisdictions

authorized complete forfeiture of a felon's estate" as a

punishment for counterfeiting or trafficking in contraband. Id.
at 5 (citing Beth A. Colgan, Reviving the Excessive Fines
Clause, 102 Cal. L. Rev. 277, 332 & nn.275-276 (2014)). Because
the founding-era crime of trafficking in contraband was
punishable by permanent forfeiture, the Government argues that
the analogous modern crime of drug trafficking can be punishable
by permanent deprivation of the right to bear arms.

Defendant argues that there is no history and tradition of
capital punishment or estate forfeiture for a felony comparable
to possession with intent to distribute cocaine. [ECF No. 24] at
5. He explains that because at the founding "drugs and alcohol
were not regulated at all," general colonial-era crimes of
trafficking in contraband cannot serve as analogues to drug
sales. Id. at 6-7. However, a historical analogue need not be a
"twin" to the modern law—the fact that trafficking in contraband
was punishable by capital punishment or estate forfeiture at the
founding provides a sufficient analogue to modern drug
trafficking.

The Government does not cite to any specific founding-era
laws, but other district courts have found an analogue in a
Virginia law allowing the death penalty for the crime of
knowingly receiving a stolen horse; a federal law enacted by the
Second Congress that authorized capital punishment for mail

6

theft; and the laws of several states permitting "a similar
punishment for the counterfeiting and forgery of public
securities." See, e.g., United States v. Mack, No. 3:24-CR-
00244, 2025 WL 221808 at *3 (W.D. La. Jan. 16, 2025). See also
United States v. Robinson, No. CR 22-253, 2024 WL 4827375 at *7
(E.D. La. Nov. 19, 2024); United States v. Barfield, No. 2:24-
CR-00007-01, 2024 WL 4859094 at *2 (W.D. La. Nov. 21, 2024);
United States v. Carter, No. CR 23-22, 2024 WL 4723236 at *6
(E.D. La. Nov. 8, 2024). In each of these cases, the court found
that founding-era laws punishing contraband trafficking with
death or permanent estate forfeiture served as sufficient
historical analogues to the modern crime of drug trafficking.
This Court agrees that while there were no laws at the Founding
that outlawed drug trafficking, the laws on contraband
trafficking constitute a sufficient analogue. Therefore, the
Court finds that § 922(g)(1) is constitutional as applied to
Defendant.

Even if the above founding-era crimes were not sufficiently
similar, § 922(g)(1) is nonetheless constitutional as applied to
criminal defendants with a history of drug trafficking because
drug traffickers pose a threat to society that would be
heightened by possession of firearms. See United States of
America v. Jesse Ray McCuin, No. 1:24-CR-38-TBM-BWR-1, 2025 WL
1285680 (S.D. Miss. May 1, 2025). In the case at hand, the

7

Government cites founding-era "going armed" laws which "served to restrict firearms access by those who pose a menace to others." [ECF No. 22] at 8 (citing Rahimi, 602 U.S. 680, 681 (2024)). The Supreme Court has found "that drugs and guns are a dangerous combination. Smith v. United States, 508 U.S. 223, 240 (1993) ("In 1989, 56 percent of all murders in New York City were drug related; during the same period, the figure for the Nation's Capital was as high as 80 percent"). "Legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed." United States v. Jackson, 110 F.4th 1120, 1128 (8th Cir. 2024).

In this case, "lawmakers have made a reasoned decision that drug traffickers are dangerous and disruptive to society. Especially so given the well understood connection between drugs, firearms, and deadly violence, which the Supreme Court has described as a 'dangerous combination.'" United States v. Reichenbach, No. 4:22-CR-00057, 2023 WL 5916467 at *8 (M.D. Pa. Sept. 11, 2023). (citing Muscarello v. United States, 524 U.S. 125, 132, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998); Alaniz, 69 F.4th 1124, 1130 (noting "the increased danger of violence when drug traffickers possess weapons" (quoting U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) cmt. n. 11(A))); United States v. Goins, No. 522CR00091GFVTMAS1, 2022 WL 17836677, at *13 (E.D.

Ky. Dec. 21, 2022) ("Serious drug offenses, like distribution or possession with intent to distribute, are inherently violent offenses that justify disarming those who commit them") (citing United States v. Torres-Rosario, 658 F.3d 110, 113 (1st Cir. 2011))). Because Cockerham's previous conviction was for trafficking in cocaine, the Court concludes that § 922(g)(1) is constitutional as applied to him, and the indictment against Defendant must stand.

C. Equal Protection Clause Argument

Defendant next argues that § 922(g)(1) violates the Equal Protection Clause of the Fifth Amendment. This clause requires that "all persons similarly situated be similarly treated." United States v. Howard, No. 24-40033, 2024 WL 4449866 at *2 (5th Cir. Oct. 9, 2024), cert. denied, No. 24-6290, 2025 WL 581782 (U.S. Feb. 24, 2025) (citing Stefanoff v. Hays Cnty., 154 F.3d 523, 525-26 (5th Cir. 1998)). In its response to Cockerham's motion, the Government cites United States v. Darrington, in which the Fifth Circuit rejected the argument that § 922(g)(1) violates the Equal Protection Clause by depending on state law to define criminal conduct and to restore a felon's Second Amendment rights, upholding its constitutionality. 351 F.3d 632, 634-35 (5th Cir. 2003). In Darrington, the Court declined to find that § 922(g)(1) burdens

9

a fundamental right and therefore declined to subject it to strict scrutiny. Id. at 635.

Defendant argues that the Fifth Circuit has "now unequivocally rejected" Darrington as precedent and therefore the Government's reliance upon it is misplaced. [ECF No. 24] at 9. At the time of the Darrington decision, the court's precedent "exclude[d] felons as a class from the Second Amendment's protection of 'the right of Americans generally to keep and bear their private arms as historically understood in this country.'" Darrington, 351 F.3d at 635 (quoting United States v. Emerson, 270 F.3d 203, 261 (5th Cir. 2001). Defendant argues that the Fifth Circuit's case law holding that § 922(g)(1) does not burden a fundamental right is now obsolete because the cases in which the court so held have been set aside by Bruen. [ECF No. 20] at 13. Now, Cockerham maintains, "because the statute contains no uniform definition of the conduct that will result in the loss of the right to possess a firearm and instead relies on diverse state definitions, § 922(g)(1) cannot withstand strict scrutiny." Id.

However, the Fifth Circuit has adopted the Darrington stance on § 922(g)(1) and the Equal Protection Clause in its post-Bruen case law. United States v. Howard, No. 24-40033, 2024 WL 4449866 (5th Cir. Oct. 9, 2024), cert. denied, No. 24-6290,

2025 WL 581782 (U.S. Feb. 24, 2025); United States v. Steward, No. 23-20515, 2024 WL 3082334 (5th Cir. June 21, 2024). The court categorized its holding in Darrington as a determination "that governmental restrictions on the right to bear arms need not meet a strict scrutiny test because it was not a fundamental right." Howard 2024 WL 4449866 at *2 (citing Darrington, 351 F.3d at 635). Both the Steward and Howard panels rejected the argument that Bruen made this holding obsolete. The Howard holding adopted the Steward conclusion that "'[n]either the Supreme Court nor this court sitting en banc has overruled Darrington.'" Id. (citing Steward, 2024 WL 3082334 at *1. Because this Court finds that Darrington still controls, it denies Defendant's motion to dismiss based on an Equal Protection Clause violation.

D. Due Process Argument

Cockerham next argues that § 922(g)(1) violates his Fifth Amendment right to Due Process by stripping him of his ability to possess firearms and ammunition as "an automatic, uncontestable consequence" of his felony conviction. [ECF No. 20] at 14 (citing United States v. Rahimi, 602 U.S. 680, 748 (Thomas, J., dissenting). The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law." U.S. CONST. Amend. V.

Defendant quotes Justice Thomas's dissent in the Rahimi opinion to support his position. In Rahimi, the Supreme Court upheld the constitutionality of 18 U.S.C. § 922(g)(8) (hereinafter "§ 922(g)(8)"), which prohibits a person from possessing a firearm while subject to a domestic violence restraining order. Rahimi, 602 U.S. at 702. Justice Thomas dissented, explaining in part that § 922(g)(8) "strips an individual of his ability to possess firearms and ammunition without any due process" because "the ban is an automatic, uncontestable consequence of certain orders." Id. at 748 (Thomas, J., dissenting). Section 922(g)(8) affords "no hearing or opportunity to be heard on the statute's applicability, and a court need not decide whether a person should be disarmed." Id. (Thomas, J., dissenting). "The only process § 922(g)(8) requires is that provided (or not) for the underlying restraining order." Id. (Thomas, J., dissenting).

Cockerham asserts that § 922(g)(1) "suffers these same defects," as it strips a felon of his Second Amendment rights as an automatic consequence of a felony conviction, requiring no finding that the person is dangerous and should be disarmed other than the fact that he has been convicted of a felony. [ECF No. 20] at 14. However, Defendant was afforded process before his right to bear arms was abridged—specifically, he was entitled to a jury trial on the underlying conviction. [ECF No. 22] at 12. Defendant's argument that § 922(g)(1) does not

12

provide a defendant with due process because it is the automatic
result of a felony conviction ignores the fact that a criminal
defendant's entitlement to a jury trial provides him with
process before he loses his right to bear arms. Furthermore, as
the Government points out, Defendant supports his argument with
Justice Thomas's dissent in Rahimi, citing no other case law to
support his conclusion that the right to a jury trial for the
underlying conviction is insufficient process under the Due
Process Clause. As discussed above, Rahimi addressed the
constitutionality of § 922(g)(8), which prohibits possession of
a firearm by a person subject to a domestic violence restraining
order. Rahimi, 602 U.S. at 702.

While Justice Thomas does state that § 922(g)(8) "strips an
individual of his ability to possess firearms and ammunition
without any due process," he notes that "Rahimi does not ask the
Court to consider, and I do not address, whether § 922(g)(8)
satisfies the Due Process Clause." Rahimi, 602 U.S. at 748 n.1.
In the language quoted by Defendant, Justice Thomas explains
that § 922(g)(8) requires no process outside of that required to
obtain a domestic violence restraining order; he does not argue
that it violates the Due Process Clause. Id. Furthermore,
Justice Thomas notes that § 922(g)(8) "does not require a
finding that a person has ever committed a crime of domestic
violence. It is not triggered by a criminal conviction or a

person's criminal history, unlike other § 922(g) subsections. See § 922(g)(1),(9)." Id. This difference in pre-deprivation process distinguishes § 922(g)(1) from § 922(g)(8); the former requires a finding of past criminal activity, while the latter does not.

While § 922(g)(1) does not require any process beyond a criminal conviction before disarming a felon, Defendant fails to explain how this lack of process violates the Due Process Clause, which requires that the government "provide 'notice and an opportunity for hearing appropriate to the nature of the case.' To satisfy the requirements of procedural due process, notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Echavarria v. Pitts, 641 F.3d 92 (5th Cir. 2011), as revised (June 21, 2011) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313-14). Before a person is disarmed under § 922(g)(1), he is granted the right to a jury trial on the underlying conviction; Congress has imposed disarmament as a punishment for committing a felony. Furthermore, § 922(g)(1) is sufficiently clear to put a reasonable person on notice that if they commit a crime punishable by imprisonment of more than one year, they will be subject to disarmament. Therefore, Defendant's argument that the

pre-deprivation process doesn't satisfy the Due Process Clause
fails.

Cockerham also argues that § 922(g)(1) violates the Due
Process Clause of the Fifth Amendment because it fails to
provide an effective process for restoring a felon's Second
Amendment rights. [ECF No. 24] at 10-11. The Government asserts
that there are processes by which a person can have his Second
Amendment rights restored, and that therefore there is no Due
Process violation. [ECF No. 22] at 11.  First, 18 U.S.C. §
921(a)(20) (hereinafter "§ 921(a)(20)") provides a process by
which a convicted felon can have his Second Amendment rights
restored:

> . . . Any conviction which has been expunged, or
> set aside or for which a person has been pardoned or
> has had civil rights restored shall not be considered
> a conviction for purposes of this chapter, unless such
> pardon, expungement, or restoration of civil rights
> expressly provides that the person may not ship,
> transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20).

Second, 18 U.S.C. § 925(c) (hereinafter "§ 925(c)")
provides that a person banned from possessing a firearm may
"make application to the Attorney General for relief from" his
firearm disability, and that the Attorney General may grant such
relief if the applicant can show that he "will not be likely to
act in a manner dangerous to public safety and that the granting

of the relief would not be contrary to the public interest." §
925(c). However, Defendant characterizes these avenues as
"illusory opportunities for restoration" of a felon's right to
bear arms [ECF No. 24] at 10. Specifically, he explains that
though § 925(c) formally provides an opportunity for a felon to
petition for the restoration of his Second Amendment rights,
Congress has declined to fund it and thus eliminated it as a
practical avenue for relief. Id., citing United States v.
McGill, 74 F.3d 64, 67 (5th Cir. 1996). A similar argument was
made and rejected by the Southern District of New York in Zherka
v. Garland, 593 F.Supp.3d 73 (S.D.N.Y. 2022). The Zherka court
wrote:

> ... Plaintiff's due process claim is foreclosed by the
> Supreme Court's decision in Connecticut Department of
> Public Safety v. Doe, 538 U.S. 1 (2003). A class of
> convicted sex offenders in Doe brought a procedural due
> process challenge to Connecticut's sex offender registry
> law, which required all persons convicted of certain sex-
> related crimes to register with the State following their
> release from prison. The sex offender class complained
> that the law, which subjected them to reporting
> requirements without affording the opportunity of a
> hearing to demonstrate whether they were likely to be
> currently dangerous to the community, violated due
> process. The Supreme Court, in rejecting the sex
> offenders' challenge, held that individualized hearings
> were not required because the registration requirement was
> based "on the fact of previous conviction, not the fact of
> current dangerousness." Id. at 4. The Supreme Court
> reasoned that "where the fact to be proven at the hearing
> is not relevant to the legal scheme responsible for the
> deprivation (that is, where it is clear that the
> government would strip the individual of his liberty even
> if he were able to prove or disprove the particular the
> fact or set of facts), such a hearing would be an exercise

16

in futility, which is not required by procedural due process." Black v. Snow, 272 F.Supp.2d 21, 34 (D.D.C. 2003) (emphasis in original), aff'd sub nom. Black v. Ashcroft, 110 F. App'x 130 (D.C. Cir. 2004).

Doe's rationale "dooms any procedural challenge to § 922(g)(1)," as "[t]he plain language of that provision makes clear Congress's decision to bar all convicted felons (not merely those with violent tendencies or who otherwise present an ongoing danger to society) from possessing firearms." Id. (emphasis in original). Here, as with the sex offender registry law in Doe, Section 922(g)(1) "make[s] the deprivation turn solely on the fact of the prior conviction—not the significance of that conviction for future behavior." Id. at 34-35. It follows, then, that "due process does not entitle [P]laintiff to a hearing to determine whether he is currently dangerous because the results of such a hearing would have no bearing on whether he is subject to the disability imposed by § 922(g)(1)." Id. at 35.

593 F.Supp.3d at 81. The Court agrees with the reasoning of the Zherka court and finds that Plaintiff's due process argument fails.

The Court further notes that § 921(a)(20) also provides an avenue for relief. Defendant argues that the relief provided in this provision is "too limited to offer meaningful relief." [ECF No. 24] at 11. He makes this assertion baldly, offering no support for what qualifies as "too limited" under the Due Process Clause. Therefore, because Congress has provided at least one method for restoration of the rights taken away under § 922(g)(1), the Court finds further reason to deny Defendant's motion on due process grounds.

E. Vagueness

Defendant next argues that § 922(g)(1) is unconstitutionally vague because it "fails to provide a person of ordinary intelligence fair notice of what conduct is prohibited." [ECF No. 20] at 14. He explains that in <u>Diaz</u>, the Fifth Circuit held that § 922(g)(1) was constitutional as applied to Diaz, but that this decision did not "foreclose future as-applied challenges by defendants with different predicate convictions." <u>United States v. Diaz</u>, 116 F.4th 458, 469, 470 n.4 (5th Cir. 2024). Cockerham argues that because it is unclear what subset of felons are subject to § 922(g)(1), the provision is void for vagueness. His argument fails.

There is a "strong presumptive validity that attaches to an Act of Congress." <u>Skilling v. United States</u>, 561 U.S. 358, 403 (2010) (quoting <u>United States v. Nat'l Dairy Prods. Corp.</u>, 372 U.S. 29, 32 (1963)). Furthermore, "statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." <u>Nat'l Dairy Prods. Corp.</u>, 372 U.S. at 32. A Louisiana district court found that a defendant's § 922(g)(1) vagueness argument failed, explaining that

> "A criminal law is void for vagueness under the
> Fifth Amendment when it is 'so vague that it fails to
> give ordinary people fair notice of the conduct it

punishes, or so standardless that it invites arbitrary enforcement.' <u>Johnson v. United States</u>, 576 U.S. 591, 595 (2015). '[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.' <u>United States v. Mazurie</u>, 419 U.S. 544, 550 (1975); <u>see United States v. Clark</u>, 582 F.3d 607, 614 (5th Cir. 2009) ('As a threshold matter, [defendant] must show that the statute is vague <u>in his case</u>.' (emphasis in original)). 'A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.' <u>Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.</u>, 455 U.S. 489, 495 (1982)."

<u>United States v. Celestine</u>, No. CR 24-92, 2025 WL 522643, at *3 (E.D. La. Feb. 18, 2025).

There is no authority holding § 922(g)(1) void for vagueness. [ECF No. 22] at 12. As the Supreme Court stated in <u>Rahimi</u>, "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." <u>Rahimi</u>, 144 S. Ct. at 1902. Disarming a person who has been convicted of drug possession with intent to distribute fits within this tradition; therefore, § 922(g)(1) is not vague as applied to Cockerham. It explicitly disarms a person who has committed a crime punishable by imprisonment for a term exceeding one year, and Cockerham's crimes were not only felonies, but clearly fit within the history and tradition of disarming individuals who pose a danger to the physical safety of others. Therefore, Defendant's vagueness challenge fails.

F. Commerce Clause

Defendant argues that § 922(g)(1) is an unconstitutional extension of Congress's authority under the Commerce Clause. This Court is bound to reject this argument, as the Fifth Circuit has found that Congress appropriately exercised its power under the Commerce Clause in enacting § 922(g)(1). See United States v. Rawls, 85 F.3d 240, 243 (5th Cir. 1996); United States v. Diaz, 116 F.4th 458, 462 (5th Cir. 2024); United States v. Alcantar, 733 F.3d 143, 145 (5th Cir. 2013) ("[W]e have consistently upheld the constitutionality of § 922(g)(1)"). In fact, Cockerham himself acknowledges that the Fifth Circuit has rejected this argument and raises it "to preserve the record for further review." [ECF No. 20] at 16. Because this Court is bound to follow Fifth Circuit precedent, Defendant's Commerce Clause argument fails.

I.   Conclusion

For the foregoing reasons, the Court DENIES Defendant Cockerham's Motion to Dismiss Count One of the Indictment.

SO ORDERED AND ADJUDGED this 19th day of May, 2025.

                              /s/ David Bramlette
                              DAVID C. BRAMLETTE III
                              UNITED STATES DISTRICT JUDGE